(Reap. Dec. 9102)

MANHATTAN EXPORT CO. ET AL. v. UNITED STATES

Entry No. 798359, etc.

(Decided March 21, 1958)

*John D. Rode* for the plaintiffs.

*George Cochran Doub*, Assistant Attorney General (*Daniel I. Auster*, trial attorney), for the defendant.

LAWRENCE, Judge: The 16 appeals for a reappraisement enumerated in the schedule, attached to and made part of this decision, were consolidated for trial. They present the question of the proper dutiable value of different models of Rocco radial drills, which had been invoiced at $3,100 for the 42-inch model and at $3,350 for the 48-inch model. Both models were appraised on the basis of foreign value, as that value is defined in section 402 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938 (19 U. S. C. § 1402 (c)), at 2,200,000 lire, less 3 per centum, plus 3 per centum tax, plus packing.

It is plaintiffs' contention that there was no foreign, export, or United States value for such or similar merchandise and that the proper basis of value is cost of production, which value is represented by the invoice prices.

The defendant asserts that there existed a foreign value for such or similar merchandise; concedes that there was no export value; and, in the alternative, alleges that a United States value existed for such merchandise and, if not, the plaintiffs have failed to establish a statutory cost of production.

Leo Malchin, sole owner of the Manhattan Export Co., appeared as a witness on behalf of plaintiffs. He stated his business to be the buying of machines in Italy and representing certain Italian manufacturers, particularly Rocco, which latter concern dealt in Rocco radial drills. He stated that he visited Italy every year before and since 1950 and that the drills were made to order in small factories. He did not know of any jobbers in Italy who bought these machines and added that he was the exclusive agent in the United States during 1952 and 1953 (the years during which the present importations were made) for the sale of the Rocco radial drills.

Malchin stated that he did not stock these machines but only purchased them after he had received a firm order. His sales in the United States were to factory representatives, salesmen who visit factories and induce the owners to buy particular machines.' He never sold direct to the factory.

Malchin testified further that Rocco drills are different from any other drills made either in Europe or in the United States, although their function is the same. They differ as to construction, prices, and quality. In explanation of the difference between the drills manufactured by Rocco and other drills the witness had seen in Italy and in other countries through which he had traveled, he compared it to the difference between a Chevrolet and a Cadillac, stating that the Rocco drills would be like the Chevrolet, a low-priced drill which gave good performance.

It was Malchin's testimony that the two models of drills in issue are models which Rocco, the manufacturer, sells in the United States through Manhattan Export Co., its agent in this country, and in France, Belgium, and other countries through different representatives. Sales of these machines were also made in Italy.

There was received in evidence as plaintiffs' exhibit 1, an affidavit of Dante Conti of Officina Meccanica di S. Rocco of Milan, Italy, relating to the cost of production of radial drills during the period of time covered by the instant importations.

On behalf of defendant, collective exhibit A, an operations memorandum from the American consulate general at Milan, Italy, dated November 13, 1952, together with a report of Thomas D. Bowie, American consul, and pages from a manufacturer's catalog, was received. In addition, there was received in evidence defendant's collective exhibit B, which is a report of the Treasury representative at Milan, Italy, dated February 19, 1954, together with accompanying papers.

For the plaintiffs to establish a value for the radial drills in controversy different from that found by the appraiser, it is incumbent upon them not only to overcome the presumption of correctness attaching to the appraiser's action, but also of sustaining their contention. To the plaintiffs falls the burden of proof. *H. S. Dorf & Co., Inc., a./c. Joseph H. Meyer Bros.* v. *United States,* 41 C. C. P. A. (Customs) 183, C. A. D. 548.

It is the first determination of the court to find whether or not there existed a foreign value of the imported articles at or about the time of exportation.

Section 402 (c), *supra,* reads as follows—

The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

In the affidavit of Dante Conti, which was subscribed and sworn to on October 8, 1954, in evidence as plaintiffs' exhibit 1, there is contained the statement that—

* * * during the years 952 [1952], 1953 and 1954 Rocco Radial Drills such as or similar to the Rocco Radial Drills exported to Manhattan Export Company in the United States were not freely offered for sale for home consumption to all purchasers in the principal markets of Italy; that the sale and offers for sale of such or similar drills were limieted [*sic*] to machine shops and manufacturers for use on their own premises; that no sales or offers for sale were made in the ordinary course of trade to dealers, jobbers or anyone buyng [*sic*] for resale; that all sales and deliveries were made by the said concern directly to the said machine shops

and manufacturers; that said firm also employed exclusive selling agents for the various provinces of Italy; * * *.

If the foregoing were the only evidence on foreign value before the court, it would evidently preclude the finding of such a value. However, in defendant's collective exhibit A, there is a report of an investigation made by Giovanni B. Scandelli under the supervision of Consul Thomas D. Bowie, Milan, Italy, reporting on interviews had with Dante Conti, manager and owner of Officina Meccanica di S. Rocco. Under the heading of "FOREIGN VALUE," there appears the following—

*Such and Similar Merchandise*

Merchandise identical to that exported to the United States is freely offered for sale for home consumption in Italy and for exportation to the United States to all classifications of customers. The manufacturer has no agents or representatives in Italy and sells the machines he manufactures to all possible customers.

*Restriction of Resale*

There are no restrictions of any sort imposed by the manufacturer on the resale of the merchandise. Only very recently the manufacturer informed all his domestic customers that radial drills TR/1 and TB/2 could not be exported to the United States because he had granted to Manhattan Export Corporation the exclusive sales rights.

*Combined Price Agreement*

Officina Meccanica S. Rocco does not fix any established resale prices for its customers. Prices quoted by the manufacturer are not determined by agreement with other manufacturers nor with manufacturers' associations.

*Prices and Terms*

No price list is available for the home market. The machines sold to Italian purchasers are arrived at by bargaining. However, the basic prices which had been established by the manufacturer during the last two years are as follows:

*January 15, 1951*

| | |
|---|---|
| Radial Drill TR/1 | 1,200,000 lire |
| Radial Drill TB/2 | 1,950,000 lire |
| * * * | * * * |

*January 15, 1952*

| | |
|---|---|
| Radial Drill TR/1 | 1,450,000 lire |
| Radial Drill TB/2 | 2,200,000 lire |
| * * * | * * * |

No trade discount is granted by the manufacturer on the above mentioned prices. Prices do not vary according to the size of orders or according to the purchaser's importance. A 3 percent cash discount is granted by the manufacturer to all classifications of buyers. However, the machines are sold FOB factory, while those exported to the United States are sold FOB Genoa and freight and packing expenses are included in the price of each machine.

\*        \*        \*        \*        \*        \*        \*

As a supplement to the information contained in defendant's collective exhibit A, there was a report prepared by the Treasury representative at Milan, Italy, on February 19, 1954 (collective exhibit B), wherein it appears that—

On various dates during the past two weeks, Mr. Dante Conti, the manager and owner of the above named manufacturing concern, has been requesting this office to invite the attention of the United States appraising officers to certain alleged errors which he made when he submitted his market value information to the American Consulate General in Milan, in November 1953 [1952].

The alleged errors are stated to have reference to the price of TB/2 Radial Drills.

Mr. Conti was requested to furnish and I am submitting herewith signed statements purported to contain the correct information regarding the home market prices in the Italian market expressed in Italian Lire currency pertaining to the TB/2 Radial Drills sold during the period from January 15, 1951 to January 15, 1952 and the higher price referring to his improved and heavier TB/2 Radial Drill which was put on sale shortly after January 15, 1952, at a higher price.

Mr. Conti claims that his usual sale in Italy is made to the dealers but he was not able to substantiate this assertion from his records. However, an analysis of all sales which Mr. Conti submitted to me for verification, showed that during the period from May 1, 1952 to December 31, 1953, he executed 10 sales in the Italian market to dealers at the price of Lire 1,950,000 and 10 sales to consumers at the price of Lire 2,200,000.

The sworn statement of Conti, to which reference was made in collective exhibit B, *supra*, reads in part as follows—

We beg you to rectify a mistake we have made some time ago (November 1952) when we have been interviewed by Mr. Scandelli in account of the American General Consulate.

Then we stated that the prices of our T. B. 2. Radial Drilling Machines we were exporting in the U. S. A. had the following prices on the Italian market:

In force January 15th. 1951 Lire 1.950.000, = plus 3% I. G. E.
In force January 15th. 1952 Lire 2.200.000, = plus 3% I. G. E.

free at our Works, no discount.

When saying the above to Mr. Scandelli we made the following omissions:

1st.) The price of Lire 2.200.000, = is not in relation to a rise of the market but it is due to the fact that our machines had been improved and their wheigth [sic] increased.

2nd.) The prices of Lire 1.950.000, = and 2.200.000, = are the prices for the users whilst those for the resalers are of Lire 1.750.000, = in force up to January 15th. 1952 and Lire 1.950.000, = after this date.

3rd.) The biggest share of our sales is made to the resalers and not to the users.

4th.) During the period May 52–December 53 we have on the contrary sold 10 machines to resalers and 10 to users, as it is shown in the lists enclosed.

Supporting Conti's sworn statement were listings of 10 sales each to wholesalers and to consumers in Italy during the period from May 1952 through December 1953.

From the foregoing references to the three documentary exhibits which are before the court, it appears that there is a patent conflict on the point of the existence or nonexistence of a foreign market for radial drills such as or similar to those here in issue.

Inasmuch as plaintiffs have failed to overcome the presumption of correctness attaching to the decision of the appraiser and to present substantial evidence in support of their claimed value, accordingly, I find as facts—

1.  That the involved merchandise consisted of 42-inch model and 48-inch model radial drills, exported from Italy.

2.  That said merchandise was entered at the invoiced prices, and both models of radial drills were appraised on the basis of foreign value at 2,200,000 lire, less 3 per centum, plus 3 per centum tax, plus packing.

3.  That the presumption of correctness attaching to the appraised value has not been overcome.

I conclude as matters of law—

1.  That foreign value, as that value is defined in section 402 (c) of the Tariff Act of 1930, as amended, *supra*, is the proper basis for the determination of the value of the radial drills here involved.

2.  That such value is the appraised value.

Judgment will be entered accordingly.